UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONNIE M. DAVIS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NIH FEDERAL CREDIT UNION, et al.,<br><br>　　　　　Defendants. | Case No. 12-cv-05502-JCS<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION AND/OR IMPROPER VENUE, AND IN THE ALTERNATIVE, MOTION TO TRANSFER FOR CONVENIENCE.**<br><br>**Dkt. No. 19** |

## I. INTRODUCTION

In this diversity action, Plaintiff Connie M. Davis (hereafter "Plaintiff") accuses Defendants NIH Federal Credit Union and its Chief Executive Officer, Juli Anne Callis, (hereafter "NIHFCU," "Callis," and collectively, "Defendants"), of violating California Labor Code § 970 by inducing Plaintiff to move from California to Maryland for a job which did not exist. Defendants bring a Motion to Dismiss ("Motion"), asserting this action must be dismissed for lack of personal jurisdiction and because venue is improper in the Northern District of California. Defendants also move for discretionary transfer of this case to Maryland. The Court finds this Motion suitable for decision without oral argument pursuant to Local Rule 7-1(b), and vacates the motion hearing scheduled for May 17, 2013, at 1:30p.m. The case management conference will still occur at that time. For the reasons explained below, Defendants' Motion is DENIED.[1]

## II. BACKGROUND

### A. Factual Allegations

Plaintiff met Defendant Callis in December of 2008 when a recruiter arranged for Plaintiff

---

[1] The parties have consented to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

to interview with Callis for a senior management position at Keypoint Credit Union ("Keypoint") in Santa Clara, California. Complaint ("Compl.") ¶ 9. According to the recruiter, Callis was so impressed with Plaintiff that she cancelled any further interviews and offered Plaintiff the job. *Id*. Plaintiff accepted the position and started working for Callis in January of 2009. *Id*. Shortly after, however, Callis resigned from Keypoint to accept the position of CEO at NIHFCU in Maryland. *Id*.

Over the next two years, Plaintiff and Callis remained in touch, primarily via email. Compl. ¶ 10. In approximately July of 2010, Callis asked Plaintiff to go to Maryland to help install a new program being opened at NIHFCU. *Id*. Plaintiff had successfully installed the program at Keypoint and Callis was impressed with her work on that project. *Id*. Plaintiff flew to Maryland and worked with NIHFCU for a week to implement the program, and apparently received positive feedback from Callis's staff about her performance on the project. *Id*.

A few months later, in late 2010, Callis began calling Plaintiff and aggressively recruiting her to work for her in Maryland. Compl. ¶ 11. Callis represented that she wanted to employ Plaintiff principally to build a new Cash Management Division in the credit union in order for the credit union to move "up market" by offering banking services to small and mid-sized businesses. *Id*. Callis also represented that her operations division needed substantial help with automation and process improvement, and that she did not know anyone who could fulfill these roles but Plaintiff. *Id*.

At the time, Plaintiff was employed at the University of California. Compl. ¶ 12. Plaintiff had lived in the San Francisco Bay Area for over 25 years and her professional network was here. *Id*. Plaintiff owned a home in Concord, California, where her two adult sons also lived. *Id*. Plaintiff also had strong ties to her religious community. *Id*. Plaintiff was not seeking other employment, but agreed to fly to Maryland for an interview. *Id*. She met with Callis and approximately five of Callis's senior managers. *Id*.

Shortly after Plaintiff returned to California, Callis called Plaintiff and informed her that all of the senior managers wanted her to join the NIHFCU staff, and offered her the position of Vice President, Cash Management and Account Operations. Compl. ¶ 13. Callis offered a

2

starting salary of $150,000 and an implied bonus of 20%, which was approximately $50,000 more than Plaintiff was making at the University of California. *Id*. Callis assured Plaintiff that the position would be long-term and that Plaintiff would be working directly for Callis. The offer letter sent by NIHFCU to Plaintiff reads, in relevant part:

> February 7, 2011
>
> Connie Davis
> 1722 Belding Court
> Concord, CA 94521
>
> Dear Connie,
>
> We are pleased to confirm our offer to you for the Vice President Cash Management and Account Operations at a semi-monthly rate of $6,250.00…. All bonus plans and other benefits are approved annually by the NIH Federal Credit Union Board of Directors. This position encompasses case management and account operations, and emerging technologies. You will accrue vacation leave at the rate of 6.66 hours per semi-monthly pay period (which is equivalent to 20 days vacation per year). Your start date will be on or before February 28, 2011. Juli Anne Callis will be your supervisor.

Declaration of Plaintiff Connie M. Davis in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction ("Davis Decl."), Exh. B. This offer letter was sent to Plaintiff by Stephen McGowen, the Chief Administration Officer of NIHFCU. *See id.*

In reliance on representations by Callis and NIHFCU, Plaintiff accepted the position and moved to Maryland. Compl. ¶ 13. She began to work for NIHFCU on February 28, 2011. *Id*. ¶ 14. Within two weeks of joining the Credit Union, however, Plaintiff was at loss as to why Callis had hired her, as there was absolutely nothing for her to do. *Id*. Plaintiff was not given the job duties as they had been represented by Callis. *Id*. Plaintiff had only one direct report, who had only five direct reports working for her. *Id*. Callis knew that Plaintiff had managed a team of more than 100 employees in six departments at the Bank of West, and had managed a team of six departments at the University of California. *Id*. The primary reason Plaintiff accepted the position at NIHFCU was because she was told by Callis that she would be able to build a new Cash Management Division, but upon arriving at NIHFCU, she was told that implementation of a new Cash Management Division was not in the company's plan for that year. *Id*. Plaintiff spent the

3

next several weeks at NIHFCU finding ways to automate processes, re-engineer processes, and modify policies and procedures. *Id*.

Approximately three months after Plaintiff began working at the Credit Union, Callis wrote Plaintiff an email informing Plaintiff that she no longer reported to Callis, and would now report to the Executive Vice President, Tim Duvall. Compl. ¶ 15. This change in Plaintiff's chain of supervision was contrary to the representations made by Callis that Plaintiff would be working directly for her, which was one of the primary reasons Plaintiff agreed to relocate to Maryland. *Id*. Plaintiff believes that Callis transferred the supervision of Plaintiff in order for Duvall to fabricate a basis to fire Plaintiff because the job she had been hired to do did not exist, as there was no plan to build a Cash Management Division until sometime in 2012. *Id*.

On July 15, 2011, approximately four and a half months after Plaintiff began working at NIHFCU, Plaintiff was called into a meeting with Duvall and NIHFCU's Chief Administration Officer and summarily fired. Compl. ¶ 16. Plaintiff protested that neither Duvall nor Callis nor any other senior manager had ever complained about any problems with her work, and had only expressed how happy they were with all the automation and process improvements she had implemented. *Id*. Duvall responded that he could do whatever he wanted because Maryland was an "at will" state. *Id*. He told Plaintiff she was fired for two reasons−first that Plaintiff had failed to write a procedure, and second that she had not figured out that there was a problem with the DDA posting system. *Id*. Plaintiff responded that she had never been asked her to write a procedure, and that the DDA posting system was an IT problem for which she was not responsible. *Id*. Duvall had no response to Plaintiff's protestations. *Id*. Plaintiff was offered no severance. *Id*.

After the meeting, the Chief Administration Officer escorted Plaintiff to her office to collect her personal items and she was escorted from the building. Compl. ¶ 16. Callis was nowhere to be found. Plaintiff immediately filed a formal complaint of her wrongful termination with two members of the NIHFCU Board of Directors, but received no response. *Id*. ¶ 17.

Plaintiff alleges that she has suffered substantial damages as a result of the inducement from Callis and NIHFCU to move to Maryland for a job that did not exist. Compl. ¶¶ 18-19. To

take the job at NIHFCU, she had to give up her employment at the University of California, where she earned $130,000 plus full benefits, a 401k plan, and vacation and sick leave. *Id*. ¶ 18. Plaintiff has not been able to find alternate employment since her termination, despite her diligent search in both Maryland and California. *Id*. She was also unable to break her lease in Maryland, so she continued to live in Maryland until moving back to California in June of 2012. *Id*. ¶ 19. While in Maryland, Plaintiff spent approximately $50,000 for rent and utilities, gasoline for her job search, and flights to and from San Francisco to visit her family. *Id.*

### B. Claim under California Labor Code § 970

Plaintiff asserts in the Complaint one cause of action arising under California Labor Code § 970, which prohibits misrepresentations concerning employment. Section 970 provides, in relevant part, that:

> [n]o person, or agent or officer thereof, directly or indirectly, shall influence, persuade, or engage any person to change … from any place within the State to any place outside, for the purpose of working in any branch of labor, through or by means of knowingly false representations, whether spoken, written, or advertised in printed form, concerning … [t]he kind, character, or existence of such work; [or t]he length of time such work will last[.]

Cal. Lab. Code § 970.

### C. The Motion

Defendants bring a Motion to Dismiss for Lack of Personal Jurisdiction and/or Improper Venue, or in the Alternative, to Transfer Venue for Convenience. Defendants argue they do not have the minimum contacts with California necessary for the Court to exercise personal jurisdiction over them. Defendants further argue that venue is not proper in the Northern District of California because neither NIHFCU nor Callis "resides" in California, and the alleged wrongful acts occurred in Maryland, not California. Accordingly, Defendants move for an order dismissing this case pursuant to Rule 12(b)(2) for lack of jurisdiction, and Rule 12(b)(3) for improper venue. In the alternative, Defendants move the Court to transfer this case to Maryland on the basis of improper venue under 28 U.S.C. § 1406(a), or for convenience under 28 U.S.C. § 1401(a).

//

//

### III. DISCUSSION

#### A. Whether the Exercise of Personal Jurisdiction over Defendants Violates Due Process

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Id*. (quoting *Sher v. Johnson*, 911 F.3d 1357, 1361 (9th Cir. 1990)). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, … uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger*, 374 F.3d at 800 (internal quotations omitted). "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id*.

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Dole Food Company, Inc. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002). "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Id*. (citing Cal. Code Civ. Proc. § 410.10). "For a court to exercise personal jurisdiction over a non-resident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Dole Food*, 303 F.3d at 1110-11 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder v. Jones*, 465 U.S. 781, 788 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

Personal jurisdiction may be either general or specific. *See Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). General jurisdiction may be established when a defendant's contacts with a state are "substantial" or "continuous and systematic" such that the defendant "can be haled into court in that state in any action, even if the action is unrelated to

those contacts." *Id*. "The standard for establishing general jurisdiction is fairly high, and requires that the defendant's contacts be of the sort that approximate physical presence." *Id*. In the Complaint, there is no allegation that commercial activities of Defendants impact California on a substantial, continuous and systematic basis. In the Opposition to Defendants' Motion, Plaintiff only argues that there is "limited" personal jurisdiction over Defendants. *See* Opp. at 13-20. NIHFCU is a corporation with its principal place of business in Maryland, and is not qualified to do business in California. Declaration of Stephen McGowan in Support of Amended Motion to Dismiss for Lack of Personal Jurisdiction and/or Venue ¶¶ 2-3. Thus, the Court finds that Defendants are not subject to general jurisdiction in California.

Nevertheless, "[e]ven if a defendant has not had continuous and systematic contacts with the state sufficient to confer general jurisdiction, a court may exercise specific jurisdiction when the following requirements are met:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Dole Food*, 303 F.3d at 1111 (internal quotations and citations omitted). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id*. (citing *Sher*, 911 F.2d at 1361). If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Dole Food*, 303 F.3d at 1111. "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

//

//

//

7

1. *Purposeful Direction or Availment*[2]

"The purposeful availment requirement ensures that a nonresident defendant will not be haled into court based upon 'random, fortuitous or attenuated contacts with the forum state." *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (quoting *Burger King*, 471 U.S at 475). Under Ninth Circuit precedent, the purposeful direction requirement for tort cases is analyzed under the "effects" test derived from *Calder v. Jones*, 465 U.S. 783 (1984). *See Dole Food*, 303 F.3d at 1111; *see also Yahoo!*, 433 F.3d at 1206 ("In tort cases, we typically inquire whether a defendant purposefully directs his activities at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum.").

Plaintiff asserts a single cause of action arising under California Labor Code § 970. "Labor Code section 970 creates a statutory tort cause of action." *Burden v. Cnty. of Santa Clara*, 81 Cal.App.4th 244, 253 (2000) (holding that the claims under § 970 are subject to the Tort Claims Act). Thus, the *Calder* 'effects' test applies to determine whether Defendants purposefully directed their conduct at California. *Panavision,* 141 F.3d at 1321 (stating that because a trademark infringement and unfair competition case was "akin" to a tort case, the court should apply the *Calder* 'effects' test). Under *Calder*, "the 'effects' test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food*, 303 F.3d at 1111.

//

//

---

[2] The Ninth Circuit often refers to this element, "in shorthand fashion, as the 'purposeful availment' prong." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (per curiam). Nevertheless, "[d]espite its label, this prong includes both purposeful availment and purposeful direction." *Id*. In contract cases, the relevant inquiry is "whether a defendant a defendant *purposefully avails* itself of the privilege of conducting activities or consummates a transaction in the forum." *Id*. (emphasis added) (internal quotations omitted). In tort cases, the relevant inquiry is "whether a defendant *purposefully directs* his activities at the forum state[.]" *Id*. (emphasis added) (internal quotations omitted).

i. Intentional Act

Plaintiff alleges that Defendants knowingly made false representations regarding the existence of a long-term position for Plaintiff at NIHFCU as the Vice President of Cash Management and Account Operations, when in fact, that position did not exist because NIHFCU did not have a plan to build a Cash Management Division until sometime in 2012. *See* Compl. ¶¶ 11-15. Thus, Plaintiff has sufficient alleged that Defendants acted intentionally. *See Dole Food*, 303 F.3d at 1111 ("Because it is clear that [Plaintiff] has sufficiently alleged that [Defendants] acted intentionally, we skip to the 'express aiming requirement.'").

ii. Express Aiming at the Forum State

The 'express aiming' requirement "is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters*, 223 F.3d at 1087. In *Bancroft & Masters*, the Ninth Circuit found "express aiming" at California when the defendant sent a letter to Virginia with the intent to disrupt the plaintiff's business in California. *See id.*; *see also Dole Food*, 303 F.3d at 1112 ("Because [Defendants] knew that Dole's principal place of business was in California, and communicated directly with those California decisionmakers, we conclude that their actions were 'expressly aimed' at the forum state."); *Data Disc, Inc. v. Sys. Tech. Assoc.*, 557 F.3d 1280, 1288 (9th Cir. 1977) ("The inducement of reliance in California is a sufficient act within California to satisfy the requirement of minimum contacts where the cause of action arises out of that inducement.").

The Court finds that Plaintiff also satisfies the 'express aiming' requirement of the *Calder* 'effects' test. Plaintiff alleges that Defendants made false representations to Plaintiff while she lived in California for the purpose of inducing her to move to Maryland. Specifically, Callis began calling Plaintiff and "aggressively" recruited her with promises of a long-term position at NIHFCU working directly for Callis. At the time these allegedly false representations were made, Defendants knew that Plaintiff was a resident of California, as Plaintiff initially met Callis in California when they worked together at Keypoint in Santa Clara, and Callis and NIHFCU recruited Plaintiff−first for a week-long assignment and then for a long-term position−while

Plaintiff had a job at the University of California. Further indication that Defendants expressly aimed their conduct at California is the offer letter NIHFCU sent to Plaintiff at her home address in Concord, California. This offer letter allegedly contained fraudulent misrepresentations regarding the existence of a position for her at NIHFCU and a false promise that Plaintiff would be working directly for Callis. Thus, the Court finds that Defendants' "intentional, and allegedly tortious, actions were expressly aimed at California." *Bancroft & Masters*, 223 F.3d at 1087.

### iii. Causing Harm in the Forum State

The final element of the *Calder* 'effects' test is satisfied if Plaintiff can show that "a jurisdictionally sufficient amount of harm is suffered in the forum state." *Yahoo!*, 433 F.3d at 1207 (en banc) (overruling prior decisions which required "the 'brunt' of the harm" to be suffered in the forum state). Although Plaintiff was in Maryland when she learned that her position at NIHFCU would be terminated, and continued to live in Maryland searching for work for approximately one year thereafter, the Court finds that Plaintiff has suffered a "jurisdictionally sufficient amount of harm" in California. *Yahoo!*, 433 F.3d at 1207.

Before moving to Maryland to work for Callis at NIHFCU, Plaintiff had lived in the San Francisco Bay Area for over twenty-five years. Compl. ¶ 12. She left her job at the University of California, where she had earned $130,000 plus benefits, and had planned to work for the rest of her career. *Id*. ¶ 18. Plaintiff was not looking for another job when Callis began to "aggressively" recruit her to work at NIHFCU. *Id*. ¶ 12. When Plaintiff moved to Maryland, she left her professional network and her local religious community to which she held significant ties. *Id*. While Plaintiff stayed in Maryland for approximately one year after her termination, she moved back to California in June of 2012. *Id*. ¶ 19. At the time the instant Complaint was filed in October 2012, Plaintiff had not yet found alternative employment, and continues to suffer from the emotional distress of being unemployed. *Id*. The Court finds that the foregoing constitutes a "jurisdictionally significant" amount of harm that Plaintiff suffered in California. Thus, Plaintiff has established the final element of the *Calder* 'effects' test.

\* \* \*

Defendants fail to cite *Calder* in their Motion, and only briefly mention the 'effects' test in a conclusory fashion in their Reply to Plaintiff's Opposition. Instead of undertaking the appropriate analytical analysis, Defendants attempt to factually distinguish *Calder* and other cases cited by Plaintiff. Defendants also assert, incorrectly, that "[a]ll of the authorities cited by plaintiff involve situations where defendant was present in the forum state, and conducted business activities in that state." Reply at 3. Even if this were true, "[i]t is not required that a defendant be physically present or have physical contacts with the forum, so long as his efforts are purposefully directed toward forum residents." *Panavision*, 141 F.3d at 1320 (internal quotations omitted).

Defendants also cite *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (1985), for the position that telephone calls and email contact with a plaintiff in California have been held not to be sufficient for purposeful availment. Motion at 8. In *Peterson*, the Ninth Circuit found that a series of phone calls and letters sent by the defendant to California were insufficient to provide the basis for personal jurisdiction over an out-of-state defendant in a legal malpractice case. *Peterson*, 771 F.2d at 1262 ("ordinarily use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the forum state.") (internal quotations omitted). *Peterson* was decided shortly after the Supreme Court's decision in *Calder*, and before the Ninth Circuit began to consistently apply the *Calder* 'effects' test to tort cases. Nevertheless, even if *Peterson* is still good law, it must be distinguished on its facts, as the defendant in *Peterson* did not initiate contact with the plaintiff, but rather made phone calls and sent letters after the plaintiff first requested his help to enforce an injury protection clause. *See id*. at 1249. In this case, Plaintiff alleges that Callis "began calling Plaintiff [in California] and aggressively recruiting her to work in for her in Maryland." Compl. ¶ 11. Thus, while the *Peterson* defendant did not purposefully direct his conduct at the forum state, Defendants in this case allegedly did.

Accordingly, the Court finds that Plaintiff has established that Defendants purposefully directed their conduct at California.

//

//

### 2. *Relatedness of the Claim*

"The second requirement for specific, personal jurisdiction is that the claim asserted in the litigation arises out of the defendant's forum related activities." *Panavision*, 141 F.3d at 1322. The Court must determine if Plaintiff would not have been injured "but for" Defendant's conduct directed towards Plaintiff in California. *See id.* Defendants argue Plaintiff cannot establish this element because her claim is based on the alleged wrongful termination of Plaintiff's employment, which occurred after Plaintiff moved to Maryland. Motion at 6. This argument is without merit.

Plaintiff has not asserted a wrongful termination claim in her Complaint. Instead, Plaintiff asserts a single claim under California Labor Code § 970, which prohibits false representations regarding the kind, character, length and existence of work in order to induce any person to move away from California to another state. *See id.* The allegedly false representations were made while Plaintiff lived in California, and form the gravamen of Plaintiff's claim. "[T]he contacts between [Defendants] and the forum state are integral and essential parts of the alleged fraudulent scheme on which [Plaintiff] basis [her] suit." *Dole Food*, 303 F.3d at 1114. But for Defendants' false representations to Plaintiff in California, Plaintiff would not be injured. *Panavision*, 141 F.3d at 1322. Accordingly, Plaintiff also sufficiently establishes the second element of specific personal jurisdiction.

### 3. *Reasonableness*

"Once it has been established that a defendant purposefully established minimum contacts with a forum, 'he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable' in order to defeat personal jurisdiction." *Dole Food*, 303 F.3d at 1144 (quoting *Burger King*, 471 U.S. at 477). To determine whether the exercise of jurisdiction is reasonable, and therefore, "comports with fair play and substantial justice," courts consider seven factors:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in

12

>convenient and effective relief; and (7) the existence of an alternative forum.

*Dole Food*, 303 F.3d at 1114.

None of the foregoing seven factors render personal jurisdiction unreasonable in this case. First, as discussed above, Defendants have purposefully directed their conduct to California. Second, while the Court recognizes the inconvenience for Defendants to have to litigate this case in California, "this factor is not dispositive." *Dole Food*, 303 F.3d at 1115. Third, there is no indication of any conflict with the sovereignty of Maryland. Fourth, "California has a strong interest in providing a forum for its residents and citizens who are tortuously injured." *Id.* at 1115-16. Fifth, this Court is the most efficient forum for resolution of this controversy, as the case has already been filed here. Sixth, the convenience of this forum is important to Plaintiff, who is a resident of the San Francisco Bay Area. Seventh, while a Maryland court may provide an alternative forum, this fact alone will not defeat this Court's exercise of personal jurisdiction.

Although Defendants bear the burden of presenting a "compelling" reason why the exercise of jurisdiction would be unreasonable, Defendants fail to discuss any of the relevant factors mentioned above. Defendants also cite *Conti v. Pneumatic Products Corp.*, 977 F.2d 978 (6th Cir. 1992), a case not binding upon this Court, in support of their argument that exercising personal jurisdiction would be unreasonable. The relevance of *Conti* is far from obvious, however, as the case merely holds that it is unreasonable for an Ohio court to assert personal jurisdiction over a Florida company who hired an Ohio resident by contacting a recruiting agency in Florida. *Conti*, 977 F.2d at 983. Defendants, therefore, have failed to meet their burden to present any "compelling" reason why the exercise of personal jurisdiction would be unreasonable.

\*   \*   \*

As a final matter, the Court specifically addresses the specific conduct of Callis and NIHFCU separately. *See Calder*, 465 U.S. at 790 ("Each defendant's contacts with the forum State must be assessed individually."). Callis's conduct is imputed to NIHFCU during the time in which she was CEO, and therefore, was an agent of NIHFCU. *Sher v. Johnson*, 911 F.2d at 1362 ("For purposes of personal jurisdiction, the actions of an agent are attributable to the principal."). Thus, Callis's "aggressive" recruiting of Plaintiff while she lived in California, and her alleged use

13

of false representations to recruit Plaintiff, is imputed to NIHFCU. *See id.* In addition, Stephen McGowan, the Chief Administrative Office of NIHFCU, sent the offer letter to Plaintiff's home address in Concord, California on behalf of NIHFCU, which also contained allegedly false representations. Therefore, the Court finds that NIHFCU had minimum contacts with California.

    Callis's contacts with California are also sufficient for the Court to assert specific jurisdiction over her as an individual. While "a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person," due process permits "personal jurisdiction over officers of a corporation as long as the court finds those officers to have sufficient minimum contacts with [the forum state]." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520, 522 (9th Cir. 1989). Callis has not been named as a defendant in this action merely because she is CEO of NIHFCU. Rather, Callis is alleged to have personally made the majority of false representations forming the basis of Plaintiff's claim and this Court's exercise of jurisdiction. Moreover, Callis first hired Plaintiff as an employee in at the Keypoint Credit Union in Santa Clara, California, and Plaintiff's trust in Callis began to develop at that time. *See* Complaint ¶¶ 9, 15. While Plaintiff's relationship with Callis during their time together at Keypoint is only tangentially related to Plaintiff's claim under California Labor Code § 970, "all of a defendant's contacts with the forum state" must be considered in a personal jurisdiction analysis, "whether or not those contacts involve wrongful activity by the defendant." *Yahoo!*, 433 F.3d at 1207. The Court finds that Callis had sufficient minimum contacts with California for the Court to assert personal jurisdiction over her individually.[3]

---

[3] Defendants cite a case from the Eleventh Circuit to support their argument that Callis cannot be subject to personal jurisdiction for her acts directed toward a forum state which were undertaken in her corporate capacity. Motion at 6 (citing *Club Car, Inc. v. Club Car (Quebec) Import, Inc.*, 362 F.3d 775 (11th Cir. 2004)). In addition to the fact *Club Car* is not binding upon this Court, this case is irrelevant because the rule from *Club Car* was derived from a series of state court cases from Georgia, *see Girard v. Weiss*, 160 Ga.App. 295, 298 (1981); *S. Electronics Distributors, Inc. v. Anderson*, 232 Ga.App. 648, 650 (1998), which have since been overruled. *See Amerireach.com, LLC v. Walker*, 290 Ga. 261 (2011) (holding that employees of a corporation that is subject to personal jurisdiction may themselves be subject to personal jurisdiction if those employees were primary participants in the activities forming the basis of jurisdiction over the corporation).

Having found that Plaintiff established the first two requirements of personal jurisdiction, and that Defendants failed to present any compelling reason why the exercise of jurisdiction would be unreasonable, the Court will assert personal jurisdiction over Defendants. The Motion to Dismiss for lack of personal jurisdiction is therefore DENIED.

### B. Whether Venue is Improper under 28 U.S.C. § 1391(b)

Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" 28 U.S.C. § 1391(b)(2). Defendants contend that venue in the Northern District of California is improper because no event giving rise to Plaintiff's claim occurred within this district. To the contrary, as discussed above, Defendants' allegedly false representations regarding the kind, character and nature of the job for which Plaintiff was recruited occurred in this district. Venue is therefore proper. Accordingly, Defendant's Motion to dismiss or transfer this case for improper venue is DENIED.

### C. Whether the Case Should be Transferred under 28 U.S.C. § 1404(a)

A case may be transferred "[f]or the convenience of parties and witnesses, in the interests of justice," to "any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). Under § 1404(a), a district court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). Courts consider multiple factors in determining whether transfer is appropriate. Such factors include:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498-99. The "relevant public policy of the forum state" is also a "significant" factor in the § 1404(a) balancing. *Id.* at 499.

The Court has considered the above-mentioned factors, and declines to exercise its discretion to transfer this case to Maryland. "The defendant must make a strong showing of

15

inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Here, Defendants have failed to articulate any inconvenience beyond the normal burdens of litigation. *See* Declaration of Micheal A. Bishop in Support of Defendants Amended Motion to Dismiss ¶ 5. While it may be expensive for Defendants and their witnesses to attend trial in California, there would be no lesser burden placed upon Plaintiff if this case were transferred to Maryland. There is no indication that any evidence available to Defendants in Maryland will not also be available for use by Defendants in California. In addition, a court located in California is better suited to adjudicate Plaintiff's single cause of action arising under California law. Therefore, this dispute should be litigated in this district. Accordingly, Defendant's Motion to transfer under § 1404(a) is DENIED.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and/or for Improper Venue, or in the Alternative, to Transfer for Convenience is DENIED.

IT IS SO ORDERED.

Dated: May 15, 2013

JOSEPH C. SPERO
United States Magistrate Judge