EXHIBIT    7

John F. Prentice, Esq. (SBN 087606)
Robert D. Postar, Esq. (SBN 103538)
Sheila A. Reid, Esq.  (SBN 161180)
John F. Prentice & Associates, P.C.
2200 Powell Street, Suite 740
Emeryville, CA 94608
Phone: 510-420-9000
Facsimile: 510-597-0718
Email: jprentice@jfprenticelaw.com

Attorneys for Plaintiff
Connie M. Davis

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONNIE M. DAVIS,<br><br>Plaintiff,<br><br>v.<br><br>NIH FEDERAL CREDIT UNION;<br>JULI ANNE CALLIS;<br>and DOES 1-10, INCLUSIVE<br><br>Defendants. | CASE NO. C12-5502 JCS<br><br>**PLAINTIFF CONNIE M. DAVIS'**<br>**REQUEST FOR PRODUCTION OF**<br>**DOCUMENTS TO DEFENDANT NIH**<br>**FEDERAL CREDIT UNION, SET TWO** |

PROPOUNDING PARTY:          PLAINTIFF:  CONNIE M. DAVIS

RESPONDING PARTY:          DEFENDANT: NIH FEDERAL CREDIT UNION

SET NUMBER:          TWO

Pursuant to Federal Rules of Civil Procedure Rule 34, you are required respond in writing, under oath, to the following Requests for Production of Documents within 30 days of service and permit for inspection and copying of the documents described below in the time required by law.  In lieu of production of the documents for inspection, Defendant may forward legible copies of them to counsel for Plaintiff on or before the date of production.  The place of production shall be:  John F. Prentice & Associates, 2200 Powell Street, Suite 740, Emeryville, CA  94608.

//

**DEFINITIONS**

1.      The term YOU, YOUR, DEFENDANT, or NIHFCU shall mean and refer to the Defendant NIH Federal Credit Union and its agents, employees, or anyone acting on its behalf.

2.      The term "IDENTIFY" when referring to an individual shall mean and refer to providing the individual's name, title, last known address and last known telephone number.

3.      The term "IDENTIFY" when referring to a business or entity, shall mean and refer to providing the name, address and last known telephone number of the business or entity.

Please supplement your responses to these interrogatories within 20 days of your receipt of any additional responsive information.

4.      The word "DOCUMENT" or "DOCUMENTS", as used herein means all written and electronic records, including but not limited to, contracts, agreements, communications, policies, manuals, correspondence, telegrams, emails, texts, memoranda, reports, books and summaries; records of telephone conversations, personal conversations and interviews; and diaries, forecasts, statistical statements, work papers, drafts, copies graphs, charges, accounts, analytical records, minutes or records of meetings, consultants' reports, appraisals, notes, marginal notations, bills, invoices, checks, photocopies, lists, ledgers, receipts and bank statements within the possession custody or control of deponent, Defendant NIH Federal Credit Union, or of any employee, representative, including, without limitation, attorneys and accountants, or of any other person acting or purporting to act for or on behalf of Defendants.

5.      The term PERTAINING TO IS used in its broadest sense and mean: refer to, describe, evidence, contain, support, rebut, refute, negate, pertain to, memorialize, identify, verify and/or in any way involve or have a logical connection to the subject matter of the request, in full or in part.

**DOCUMENT REQUESTS**

**REQUEST NO. 13:**

All DOCUMENTS YOU relied upon in the decision to hire Plaintiff, Connie Davis.

**REQUEST NO. 14:**

All DOCUMENTS PERTAINING TO the implementation of a Cash Management Division at NIH Federal Credit Union, from January 1, 2009, to the present.

**REQUEST NO. 15:**

All DOCUMENTS PERTAINING TO the job duties of the NIH Federal Credit Union Vice President, Cash Management & Account Operations, from January 1, 2009, to the present.

**REQUEST NO. 16:**

All DOCUMENTS PERTAINING TO the job description for the position of NIH Federal Credit Union Vice President, Cash Management & Account Operations, from January 1, 2009, to the present.

**REQUEST NO. 17:**

All DOCUMENTS PERTAINING TO Plaintiff's actual job duties while she was employed at NIH Federal Credit Union.

**REQUEST NO. 18:**

All DOCUMENTS PERTAINING TO Plaintiff's job performance at NIH Federal Credit Union.

**REQUEST NO. 19:**

Plaintiff's complete NIH Federal Credit Union personnel file.

**REQUEST NO. 20:**

All DOCUMENTS YOU relied upon in the decision to terminate Plaintiff's employment with NIH Federal Credit Union.

**REQUEST NO. 21:**

All NIH Federal Credit Union personnel policy and procedure manuals in effect from January 1, 2009 to the present.

**REQUEST NO. 22:**

All NIH Federal Credit Union employee handbooks in effect from January 1, 2009 to the present.

**REQUEST NO. 23:**

All DOCUMENTS PERTAINING TO the decision to create the "new Cash Management Division" at NIHFCU described in Exhibit "A" attached hereto, from January 1, 2009, to the present.

/ / /

1  **REQUEST NO. 24:**

2      All DOCUMENTS constituting or PERTAINING TO YOUR business plan for the creation of

3  the "new Cash Management Division" described in Exhibit "A" attached hereto, from January 1, 2009,

4  to the present.

5  **REQUEST NO. 25:**

6      All DOCUMENTS PERTAINING TO the products and services that YOU planned to offer

7  through the proposed "new Cash Management Division" that is described in Exhibit "A" attached

8  hereto, from January 1, 2009, to the present.

9  **REQUEST NO. 26:**

10     All DOCUMENTS PERTAINING TO the types of members or prospective members (e.g.,

11  individuals, small businesses, large businesses) to whom the products and services the proposed "new

12  Cash Management Division" described at Exhibit "A" were to be offered, from January 1, 2009, to the

13  present.

14  **REQUEST NO. 27:**

15     All DOCUMENTS PERTAINING TO any applicant search by YOU to fill the Vice President

16  of Cash Management and Account Operations position, including but not limited to online advertising

17  and communications to job placement firms about the position, from January 1, 2009, to the present.

18  **REQUEST NO. 28:**

19     All DOCUMENTS PERTAINING TO meetings concerning the creation of the new Cash

20  Management Division, from January 1, 2009, to the present, including but not limited to board meeting

21  agendas and minutes, senior management meeting agendas and minutes, strategic planning meeting

22  agendas and minutes, and handouts and communications regarding the same.

23  **REQUEST NO. 29:**

24     All DOCUMENTS PERTAINING TO the "Cash Management Division" that were created

25  during PLAINTIFF'S employment at NIHFCU.

26  / / /

27  / / /

28  / / /

1

**REQUEST NO. 30:**

2      All DOCUMENTS PERTAINING TO any decision <u>not</u> to implement the "new Cash

3   Management Division" at NIHCU identified in Exhibit "A" attached hereto, from January 1, 2009, to

4   the present.

5   **REQUEST NO. 31:**

6      If YOU contend that the Cash Management Division was implemented at NIHFCU, all

7   DOCUMENTS PERTAINING TO the decision to implement it, from January 1, 2009, to the present.

8   **REQUEST NO. 32:**

9      If YOU contend that the Cash Management Division was implemented at NIHFCU, all

10  DOCUMENTS PERTAINING TO the date it was implemented.

11  **REQUEST NO. 33:**

12     If YOU contend that the Cash Management Division was implemented at NIHFCU, all

13  DOCUMENTS PERTAINING TO YOUR marketing of the products and services offered through the

14  Cash Management Division, from January 1, 2009, to the present.

15  **REQUEST NO. 34:**

16     All emails between PLAINTIFF and DEFENDANT CALLIS during PLAINTIFF'S

17  employment at NIHFCU.

18  **REQUEST NO. 35:**

19     The monthly emails from PLAINTIFF to DEFENDANT CALLIS during PLAINTIFF's

20  employment at NIHFCU PERTAINING TO PLAINTIFF'S work-related accomplishments.

21  **REQUEST NO. 36:**

22     If YOU contend anyone other than Plaintiff was given the title of, or a title including, "Vice

23  President of Cash Management," all DOCUMENTS bearing the person(s) name and title, from January

24  1, 2009, to the present.

25  **REQUEST NO. 37:**

26     All DOCUMENTS PERTAINING TO any assignments and/or projects given Plaintiff while

27  she was employed at NIHFCU pertaining to the creation of the "new Cash Management Division."

28  / / /

1  **REQUEST NO. 38:**

2      All DOCUMENTS PERTAINING TO any investigation into Plaintiff's performance that was

3  undertaken by YOU prior to terminating PLAINTIFF.

4  **REQUEST NO. 39:**

5      All DOCUMENTS, including but not limited to telephone records, PERTAINING TO

6  communications between PLAINTIFF and anyone employed at NIHFCU prior to February 28, 2011,

7  including communications with Defendant Juli Anne Callis.

8  **REQUEST NO. 40:**

9      All DOCUMENTS, including but not limited to organizational charts and schematics,

10  PERTAINING TO the organizational structure of NIHFCU, from January 1, 2009, to the present.

11  DATED: November 8, 2013          JOHN F. PRENTICE & ASSOCIATES, P.C.

12

13  _____

14  John F. Prentice, Esq.
    Sheila A. Reid, Esq.

15  Attorneys for Plaintiff
    Connie M. Davis

16

17

18

19

20

21

22

23

24

25

26

27

28

## Vice President Cash Management and Account Operations

1. **Job Summary** (Purpose of the Position – please give a brief description of the overall purpose of the position. "Why does this position exist?")

   Involves creating a new Cash Management Division and upgrading and modifying the existing Account Operations Division. Responsible for establishing the goals and objectives for both teams and taking the necessary steps to create responsive and efficient operations to exceed the corporate vision for these areas. General management includes long and short range strategic planning in determining the mission and directing all activities of multi-disciplinary departments through subordinate management staff.

2. **Scope**

   <u>Primary Responsibilities:</u> Serves as the member of the NIHFCU Management Team that is directly responsible for the development, implementation and daily operation of account operations and cash management services in a manner consistent with policy and regulatory requirements. This includes but is not limited to Domestic and International payments, wires, remittances, debit card, ACH and ATM service contracts. Responsible for timely and accurate reconciliations and settlements to all partner organizations.

   Has significant responsibility for formulating and administering policies and programs. Identifies broad objectives, directs significant programs, manages significant human and financial and often physical resources, and functions with a very high degree of autonomy. Oversees through subordinate managers the accountability and stewardship of resources (operational, financial, and human) in a manner consistent with NIHFCU's compliance goals and objectives. Oversees development of systems and procedures to protect organizational assets.

   <u>Custom Scope:</u> Participates with other higher-level managers to establish strategic plans and objectives. Makes decisions on operational matters and ensures achievement of objectives for a credit union in the 500-750MM range. Reviews and approves recommendations for operational planning and control. Erroneous decisions will have serious impact on the overall success of the department, division or Organization. Responsible for establishing and growing a new Cash Management division with the primary objective being to expand NIHFCU into a full service depository entity dedicated to addressing the full scope of client banking needs. Responsible for assessing and recreating the account operations division to create methodologies to enhance the account operations' division policies and procedures to create a world class entity that will far exceed the competition in exceeding client expectations.

3. **Key Responsibilities** (Indicate key functions and the estimated percentage of time spent performing each function.

EXHIBIT "A"

NIHFCU   0012

**PROOF OF SERVICE**

**Connie M. Davis v. NIH Federal Credit Union; Juli Anne Callis, et al.**

**USDC No. District Case No. C12-5502-JCS:**

I am a citizen of the United States, am over the age of eighteen years, am employed in the City of Emeryville and County of Alameda, and am not a party to the within action.  My business address is 2200 Powell Street, Suite 740, Emeryville, CA 94608.  On the date set forth below I served true and correct copies of the following document(s):

**PLAINTIFF CONNIE M. DAVIS' REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT NIH FEDERAL CREDIT UNION, SET TWO**

to which this declaration is attached, upon the parties to this action via:

[X]      MAIL - I placed sealed, postage prepaid envelopes in the United States mail in said city, addressed to the following individual(s):

Tyler A. Brown, Esq.
Joshua Kuns, Esq.
Jackson Lewis, LLP
50 California Street, 9th Floor
San Francisco, CA 94111

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 8, 2013 at Emeryville, California.



_____
Maria Nevarez

EXHIBIT    8

1   Tyler A. Brown (State Bar No. 121350)
    Joshua A. Kuns (State Bar No. 272206)
2   JACKSON LEWIS LLP
    50 California Street, 9ᵗʰ Floor
3   San Francisco, California  94111
    Telephone: (415) 394-9400
4   Facsimile: (415) 394-9401
    Email: brownt@jacksonlewis.com
5
    Attorneys for Defendants
6   NIH FEDERAL CREDIT UNION and JULI
    ANNE CALLIS
7

8              UNITED STATES DISTRICT COURT

9        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  CONNIE M. DAVIS,                    Case No.  C12-5502 JCS

12            Plaintiff,                **DEFENDANT NIH FEDERAL CREDIT
                                        UNION'S RESPONSE TO PLAINTIFF'S
       v.                               REQUEST FOR PRODUCTION OF
13                                      DOCUMENTS, SET TWO**

14  NIH FEDERAL CREDIT UNION; JULI
    ANNE CALLIS; and DOES 1 through 50,
15  INCLUSIVE,

16            Defendants.

17  PROPOUNDING PARTY:        Plaintiff CONNIE M. DAVIS

18  RESPONDING PARTY:        Defendant NIH FEDERAL CREDIT UNION
19

20  SET NO.:                 TWO

21        Pursuant to Federal Rules of Civil Procedure §§ 34 *et seq*, Defendant NIH FEDERAL

22  CREDIT UNION ("Defendant" "NIH") hereby responds to Plaintiff CONNIE M. DAVIS'

23  ("Plaintiff") Request for Production of Documents, Set One, as follows:

24            **REQUEST FOR PRODUCTION OF DOCUMENTS**

25  **REQUEST FOR PRODUCTION NO. 13:**

26        All DOCUMENTS YOU relied upon in the decision to hire Plaintiff, Connie Davis.

27  **RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

28        Defendant will produce all responsive documents in its custody, possession, and control.

                                        1                    Case No.: C12-5502 JCS

**REQUEST FOR PRODUCTION NO. 14:**

All DOCUMENTS PERTAINING TO the implementation of Cash Management Division at NIH Federal Credit Union, from January 1, 2009, to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

OBJECTION:  Defendant objects to this request as vague and ambiguous as to the term "implementation."  Taking "implementation" to mean any steps taken by Defendant to expand or enhance Cash Management services, Defendant responds as follows:  Defendant will produce all responsive documents in its custody, possession, and control.

**REQUEST FOR PRODUCTION NO. 15:**

All DOCUMENTS PERTAINING TO the job duties of the NIH Federal Credit Union Vice President, Cash Management & Accounting Operations, from January 1, 2009, to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

OBJECTION:  Defendant objects to this request as overbroad, vague and ambiguous as to the term "job duties."  Defendant will produce all responsive documents in its custody, possession, and control.

**REQUEST FOR PRODUCTION NO. 16:**

All DOCUMENTS PERTAINING TO the job description for the position of NIH Federal Credit Union Vice President, Cash Management & Accounting Operations, from January 1, 2009 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Defendant will produce all responsive documents in its custody, possession, and control.

**REQUEST FOR PRODUCTION NO. 17:**

All DOCUMENTS PERTAINING TO Plaintiff's actual job duties while she was

1   employed at NIH Federal Credit Union.

2   **RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

3         Defendant objects to this request on the grounds that it is vague, ambiguous and

4   overbroad.  Without waiving said objections, Defendant will produce all responsive documents in

5   its custody, possession, and control.

6

7   **REQUEST FOR PRODUCTION NO. 18:**

8         All DOCUMENTS PERTAINING TO Plaintiff's job performance at NIH Federal Credit

9   Union.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

11        Defendant objects to this request on the grounds that it is vague, ambiguous and

12  overbroad.  Without waiving said objections, after a diligent search and reasonable inquiry,

13  Defendant avers that no written performance reviews were prepared.

14

15  **REQUEST FOR PRODUCTION NO. 19:**

16        Plaintiff's complete NIH Federal Credit Union personnel file.

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

18        Defendant will produce all responsive documents in its custody, possession, and control.

19

20  **REQUEST FOR PRODUCTION NO. 20:**

21        All DOCUMENTS YOU relied upon in the decision to terminate Plaintiff's employment

22  with NIH Federal Credit Union.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

24        Defendant will produce all responsive documents in its custody, possession, and control.

25

26  **REQUEST FOR PRODUCTION NO. 21:**

27        All NIH Federal Credit Union personnel policy and procedure manuals in effect from

28  January 1, 2009 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Defendant has produced all responsive documents in its custody, possession, and control.

**REQUEST FOR PRODUCTION NO. 22:**

All NIH Federal Credit Union employee handbooks in effect from January 1, 2009 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Defendant has produced all responsive documents in its custody, possession, and control.

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS PERTAINING TO the decision to create the "new Cash Management Division" at NIHFCU described in Exhibit "A" attached hereto, from January 1, 2009, to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

OBJECTION: Defendant objects to this request as vague and ambiguous as to the phrase "create." Defendant will produce all relevant, non-privileged responsive documents in its custody, possession, and control.

**REQUEST FOR PRODUCTION NO. 24:**

All DOCUMENTS constituting or PERTAINING TO YOUR business plan for the creation of the "new Cash Management Division" described in Exhibit "A" attached hereto, from January 1, 2009, to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

OBJECTION: Defendant objects to this request as vague and ambiguous as to the phrase "business plan." Without waiving said objections, Defendant will produce all relevant, non-privileged responsive documents in its custody, possession, and control.

Case No.: C12-5502 JCS

DEFENDANT NIH'S RESPONSE TO RFPD, SET TWO

**REQUEST FOR PRODUCTION NO. 25:**

All DOCUMENTS PERTAINING TO the products and services that YOU planned to offer through the proposed "new Cash Management Division" that is described in Exhibit "A" attached hereto, from January 1, 2009, to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

OBJECTION:  Defendant objects to this request on the grounds that it is overbroad, unduly burdensome and seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.  Lipton v. Superior Court (1996) 48 Cal. App. 4th 1599, 1612 ("the scope of permissible discovery is one of *reason, logic and common sense*") [emphasis added].  Notwithstanding the foregoing, Defendant responds as follows:  Defendant will produce all responsive documents in its custody, possession, and control.

**REQUEST FOR PRODUCTION NO. 26:**

All DOCUMENTS PERTAINING TO the types of members or prospective members (e.g., individuals, small businesses, large businesses) to whom the products and services the proposed "new Cash Management Division" described at Exhibit "A" were to be offered, from January 1, 2009, to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

OBJECTION:  Defendant objects to this request on the grounds that it is overbroad, unduly burdensome and seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.  Lipton v. Superior Court (1996) 48 Cal. App. 4th 1599, 1612 ("the scope of permissible discovery is one of *reason, logic and common sense*") [emphasis added].  Notwithstanding the foregoing, Defendant responds as follows:  Defendant will produce all responsive documents in its custody, possession, and control.

**REQUEST FOR PRODUCTION NO. 27:**

1        All DOCUMENTS PERTAINING TO any applicant search by YOU to fill the Vice

2   President of Cash Management and Account Operations position, including but not limited to

3   online advertising and communications to job placement firms about the position, from January 1,

4   2009, to the present.

5   **RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

6        Defendant will produce all responsive documents in its custody, possession, and control.

7

8   **REQUEST FOR PRODUCTION NO. 28:**

9        All DOCUMENTS PERTAINING TO meetings concerning the creation of the new Cash

10   Management Division, from January 1, 2009, to the present, including but not limited to board

11   meeting agendas and minutes, senior management meeting agendas and minutes, strategic

12   planning meeting agendas and minutes, and handouts and communications regarding the same.

13   **RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

14        OBJECTION:  Defendant objects to this request as vague and ambiguous as to the phrase

15   "creation."  Defendant will produce all responsive documents in its custody, possession, and

16   control.

17

18   **REQUEST FOR PRODUCTION NO. 29:**

19        All DOCUMENTS PERTAINING TO the "Cash Management Division" that were

20   created during PLAINTIFF'S employment at NIHFCU.

21   **RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

22        OBJECTION:  Defendant objects to this request on the grounds that it is overbroad,

23   unduly burdensome and seeks information that is neither relevant to the subject matter of this

24   action nor reasonably calculated to lead to the discovery of admissible evidence.  Lipton v.

25   Superior Court (1996) 48 Cal. App. 4th 1599, 1612 ("the scope of permissible discovery is one of

26   *reason, logic and common sense*") [emphasis added].  Notwithstanding the foregoing, Defendant

27   responds as follows:  Defendant will produce all responsive documents in its custody, possession,

28   and control.

DEFENDANT NIH'S RESPONSE TO RFPD, SET TWO

**REQUEST FOR PRODUCTION NO. 30:**

All DOCUMENTS PERTAINING TO any decision <u>not</u> to implement the "new Cash Management Division" at NIHCU identified in Exhibit "A" attached hereto, from January 1, 2009, to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

OBJECTION:  Defendant objects to this request as vague and ambiguous as to the term "implement."  Taking "implement" to mean any steps taken by Defendant to create a new Cash Management Division, Defendant responds as follows:  After a diligent search and reasonable inquiry, Defendant has not located any responsive documents in its possession, custody or control.  This is because no such documents exist or ever existed.

**REQUEST FOR PRODUCTION NO. 31:**

If YOU contend that the Cash Management Division was implemented at NIHFCU, all DOCUMENTS PERTAINING TO the decision to implement it, from January 1, 2009, to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

OBJECTION:  Defendant objects to this request as vague and ambiguous as to the term "implement."  Taking "implement" to mean any steps taken by Defendant to enhance or expand its Cash Management services, Defendant responds as follows:  Defendant will produce all responsive documents in its custody, possession, and control.

**REQUEST FOR PRODUCTION NO. 32:**

If YOU contend that the Cash Management Division was implemented at NIHFCU, all DOCUMENTS PERTAINING TO the date it was implemented.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

OBJECTION:  Defendant objects to this request as vague and ambiguous as to the term "implemented."  Taking "implemented" to mean any steps taken by Defendant to enhance or

1  expand its Cash Management services, Defendant responds as follows:  Defendant will produce

2  all responsive documents in its custody, possession, and control.

3

4  **REQUEST FOR PRODUCTION NO. 33:**

5      If YOU contend that the Cash Management Division was implemented at NIHFCU, all

6  DOCUMENTS PERTAINING TO YOUR marketing of the products and services offered

7  through the Case Management Division, from January 1, 2009, to the present.

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

9      OBJECTION:  Defendant objects to this request as vague and ambiguous as to the term

10  "implement."  Taking "implement" to mean any steps taken by Defendant to enhance or expand

11  Cash Management services, Defendant responds as follows:  Defendant will produce all

12  responsive documents in its custody, possession, and control.

13

14  **REQUEST FOR PRODUCTION NO. 34:**

15      All emails between PLAINTIFF and DEFENDANT CALLIS during PLAINTIFF'S

16  employment at NIHFCU.

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

18      OBJECTION:  Defendant objects to this request on the grounds that it is overbroad,

19  unduly burdensome and seeks information that is neither relevant to the subject matter of this

20  action nor reasonably calculated to lead to the discovery of admissible evidence.  Lipton v.

21  Superior Court (1996) 48 Cal. App. 4th 1599, 1612 ("the scope of permissible discovery is one of

22  *reason, logic and common sense*") [emphasis added].  Notwithstanding the foregoing, Defendant

23  responds as follows:  Defendant will produce all relevant, non-privileged responsive documents

24  in its custody, possession, and control.

25

26  **REQUEST FOR PRODUCTION NO. 35:**

27      The monthly emails from PLAINTIFF to DEFENDANT CALLIS during PLAINTIFF's

28  employment at NIHFCU PERTAINING TO PLAINTIFF'S work-related accomplishments.

Case No.: C12-5502 JCS

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

OBJECTION: Defendant objects to this request as vague and ambiguous as the phrase "monthly emails." Defendant further objects to this request as duplicative of request number 34. Responsive documents will be produced in response to that request.

**REQUEST FOR PRODUCTION NO. 36:**

If YOU contend anyone other than Plaintiff was given the title of, or a title including, "Vice President of Cash Management," all DOCUMENTS bearing the person(s) name and title, from January 1, 2009, to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

OBJECTION: Defendant objects to this request on the grounds that it is overbroad, unduly burdensome and seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence. Lipton v. Superior Court (1996) 48 Cal. App. 4th 1599, 1612 ("the scope of permissible discovery is one of *reason, logic and common sense*") [emphasis added Notwithstanding the foregoing, Defendant responds as follows: After a diligent search and reasonable inquiry, Defendant has not located any responsive documents in its possession, custody or control. This is because no such documents exist or ever existed.

**REQUEST FOR PRODUCTION NO. 37:**

All DOCUMENTS PERTAINING TO any assignments and/or projects given Plaintiff while she was employed at NIHFCU pertaining to the creation of the "new Cash Management Division."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

OBJECTION: Defendant objects to this request on the grounds that it is overbroad, unduly burdensome and seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence. Lipton v. Superior Court (1996) 48 Cal. App. 4th 1599, 1612 ("the scope of permissible discovery is one of

1     *reason, logic and common sense*") [emphasis added].

2

3     **REQUEST FOR PRODUCTION NO. 38:**

4        All DOCUMENTS PERTAINING TO any investigation into Plaintiff's performance that

5     was undertaken by YOU prior to terminating PLAINTIFF.

6     **RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

7        Defendant objects to this request on the grounds that the term "investigation" is vague and

8     ambiguous.  As previously stated, Plaintiff was not employed long enough to go through any

9     performance review process.

10

11     **REQUEST FOR PRODUCTION NO. 39:**

12        All DOCUMENTS, including but not limited to telephone records, PERTAINING TO

13     communications between PLAINTIFF and anyone employed at NIHFCU prior to February 28,

14     2011, including communications with Defendant Juli Anne Callis.

15     **RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

16        OBJECTION:  Defendant objects to this request on the grounds that it is overbroad,

17     unduly burdensome and seeks information that is neither relevant to the subject matter of this

18     action nor reasonably calculated to lead to the discovery of admissible evidence.  Lipton v.

19     Superior Court (1996) 48 Cal. App. 4th 1599, 1612 ("the scope of permissible discovery is one of

20     *reason, logic and common sense*") [emphasis added].

21

22     **REQUEST FOR PRODUCTION NO. 40:**

23        All DOCUMENTS, including but not limited to organizational charts and schematics,

24     PERTAINING TO the organizational structure of NIHFCU, from January 1, 2009, to the present.

25     **RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

26        OBJECTION:  Defendant objects to this request on the grounds that it is overbroad,

27     unduly burdensome and seeks information that is neither relevant to the subject matter of this

28     action nor reasonably calculated to lead to the discovery of admissible evidence.  Lipton v.

1    Superior Court (1996) 48 Cal. App. 4th 1599, 1612 ("the scope of permissible discovery is one of

2    *reason, logic and common sense*") [emphasis added].  Notwithstanding the foregoing, Defendant

3    responds as follows:  Defendant will produce all relevant, non-privileged responsive documents

4    in its custody, possession, and control.

5

6    Dated:  December 12, 2013                    JACKSON LEWIS P.C.

7

8                                              By:  _____

9                                                   Tyler A. Brown
                                                    Joshua A. Kuns
10                                                   NIH FEDERAL CREDIT UNION and JULI
                                                    ANNE CALLIS
11

12

13   4853-3123-7654, v. 3

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT NIH'S RESPONSE TO RFPD, SET TWO

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | I, S. Monique Belle, declare that I am employed with the law firm of Jackson Lewis P.C., whose |
| 3 | address is 50 California Street, 9th Floor, San Francisco, CA 94111; I am over the age of eighteen (18) |
| 4 | years and am not a party to this action. |
| 5 | On December 12, 2013, I served the attached: |

**DEFENDANT NIH FEDERAL CREDIT UNION'S RESPONSE TO
PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS, SET TWO**

in this action by placing a true and correct copy thereof, enclosed in a sealed  envelope addressed as follows:

Shelia A. Reid
John F. Prentice & Associates, P.C.
2200 Powell Street, Suite 740
Emeryville, CA 94608
Tel.: 510-420-9000
Fax: 510-597-0718
Email: sreid@jfprenticelaw.com


[X]  BY MAIL:  United States Postal Service by placing sealed envelopes with the postage thereon fully prepaid, placed for collection and mailing on this date, following ordinary business practices, in the United States mail at San Francisco, California.

[ ]  BY HAND DELIVERY:  I caused such envelope to be delivered by hand to the above address.

[ ]  BY OVERNIGHT DELIVERY:  I caused such envelope to be delivered to the above address within 24 hours by overnight delivery service (via Overnight Express).

[ ]  BY FACSIMILE:  I caused such documents to be transmitted by facsimile to the number indicated above.

[X]  BY ELECTRONIC TRANSMISSION:  I caused such document(s) to be electronically transmitted to the above email address.

///

///

///

---

CERTIFICATE OF SERVICE                                             Case No.: C12-5502-JCS

1    I declare under penalty of perjury under the laws of the State of California that the above is true

2  and correct; executed on December 12, 2013, at San Francisco, California.

3

S. Monique Belle

4

4842-4463-8741, v. 1

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE                                    Case No.: C12-5502-JCS

## VERIFICATION

I, Timothy Duvall, declare:

I am the Acting CEO for NIH Federal Credit Union, Defendant in the action of *Connie Davis v. NIH Federal Credit Union, Juli Anne Callis and Does 1 through 50 inclusive*, United States District Court for the Northern District of California,  Case No. C12-5502 JCS.  I am authorized to make this Verification for and on its behalf, and I make this Verification for that reason.

I have read the foregoing **DEFENDANT NIH FEDERAL CREDIT UNION'S RESPONSE TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS, SET TWO** and know the contents thereof.  Based on my personal knowledge or information and belief, the matters stated therein are true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 12th day of December, 2013, at Rockville, MD.

Timothy Duvall

4831-5894-4535, v. 1

Case No. CGC-10-500817

VERIFICATION

EXHIBIT   9

Print  |  Close Window

Subject: RE: Davis v. NIHFCU et al. Discovery Meet and Confer
   From: "Brown, Tyler A. (San Francisco)" <BrownT@jacksonlewis.com>
   Date: Wed, Dec 18, 2013 2:32 pm
     To: "sreid@jfprenticelaw.com" <sreid@jfprenticelaw.com>
     Cc: "Kuns, Joshua A. (San Francisco)" <Joshua.Kuns@jacksonlewis.com>
 Attach: CDavis_Resume_2011_Final1.doc
          NIHFCU Agenda 5-27-10.pdf
          NIHFCU Minutes 5-27-10.pdf
          BNY Mellon Presentation to Board.pdf

Sheila, with regard to documents responsive to RPD 28, we produced a Board agenda
and minutes from May 27, 2010, as well as a presentation to the Board. I don't have the
Bates-Stamped number off the top of my head, but they are attached for your reference in
the interests of getting you a response as soon as possible. There are no other
responsive documents.

There is no specific date (at least that anyone recalls) and no document which
memorializes a specific date that cash management became not a primary focus, other
than as Mr. Duvall will attest in his declaration that it was after the decision to hire Ms.
Davis.

With regard to the attachments you seek, document #441-443 is the attachment to #402.
Attached is the resume that is attached to #472. I believe this, too, is Bates-stamped, but
in the interests of expediency, I am attaching it here for your review.


Tyler


Tyler A. Brown
Attorney at Law
Jackson Lewis P.C.
50 California St., 9th Floor
San Francisco, CA 94111

415.394.9400 | Main
415.796.5422 | Direct
415.394.9401 | Fax

brownt@jacksonlewis.com

www.jacksonlewis.com


From: sreid@jfprenticelaw.com [mailto:sreid@jfprenticelaw.com]
Sent: Wednesday, December 18, 2013 12:26 PM
To: Brown, Tyler A. (San Francisco)
Cc: Kuns, Joshua A. (San Francisco)
Subject: RE: Davis v. NIHFCU et al. Discovery Meet and Confer

Tyler,

I am writing to further meeting and conferring on Defendants' discovery responses: NIHFCU responded that it would produce documents responsive to RPD 28 seeking documents pertaining to board and management meetings concerning the creation of the new Cash Management Division, but no such documents have been produced. Please confirm whether any exist and if so please produce them.

Defendant responded to Special Interrogatory No. 35 seeks the date NIHFCU decided not to implement the new Cash Management Division that it did not make that decision but decided it "would not be a primary focus." This is splitting hairs. I understand from the rest of NIHFCU's responses that a cash management division has not been implemented to date. The only documents produced that even reference cash management during Plaintiff's employment are emails authored by Plaintiff. No documents have been produced that reference it thereafter. Effectively any decision not to make it a "priority" was a decision not to implement it, whether for the time being or forever. Please advise of the date Defendant decided "not to make it a priority" and produce any documents related to that decision responsive to RPD No. 30. Thank you.

Lastly, there are a couple of emails of Plaintiff's that NIHFCU has produced that reference an attachment, but no attachments were produced. The documents I am presently aware of are Bates Nos. NIH402 and NIH471. Do you have the attachments?

Sincerely,

Sheila A. Reid, Esq.
JOHN F. PRENTICE & ASSOCIATES
2200 Powell Street Suite 740
Emeryville, CA 94608
p 510-420-9000
f 510-597-0718

CONFIDENTIALITY NOTICE: This message contains information and attachments which may be confidential, privileged and protected from disclosure. Unless you are the addressee (or authorized to receive messages for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email and delete the message without reading the information contained within. Nothing in this message should be interpreted as a digital or electronic signature that can be used to authenticate a contract or other legal document.

-------- Original Message --------
Subject: RE: Davis v. NIHFCU et al. Discovery Meet and Confer
From: "Brown, Tyler A. (San Francisco)" <BrownT@jacksonlewis.com>
Date: Fri, December 13, 2013 1:43 pm
To: "'sreid@jfprenticelaw.com'" <sreid@jfprenticelaw.com>
Cc: John Prentice <jprentice@jfprenticelaw.com>

Sheila, we have not withheld any privileged documents. With regard to No. 37, we should have added that we would produce responsive documents (which I believe we

did). I will amend our response accordingly. Thanks. Tyler

Tyler A. Brown
Attorney at Law
Jackson Lewis P.C.
50 California Street, 9th Floor
San Francisco, CA 94111

415.394.9400 | Main
415.796-5422 | Direct
415.394.9401 | Fax

brownt@jacksonlewis.com

www.jacksonlewis.com

**From:** sreid@jfprenticelaw.com [mailto:sreid@jfprenticelaw.com]
**Sent:** Friday, December 13, 2013 1:27 PM
**To:** Brown, Tyler A. (San Francisco)
**Cc:** John Prentice
**Subject:** Davis v. NIHFCU et al. Discovery Meet and Confer

Tyler,
Thank you for emailing Defendants' discovery responses to us.  NIHFCU
responded to Document Request numbers 23, 24, 34 and 40 that it
would produce all non-privileged responsive documents.  If Defendants
are withholding any documents responsive to these requests on
privilege grounds, please provide a Privilege Log.  If not, please let me
know that too.

NIHFCU objected to Request No. 37 on relevancy grounds and did not
indicate it would produce documents responsive to this request. The
request seeks documents relating to assignments or projects given to
my client concerning the creation of a new Cash Management
Division. Communications from management to my client about the
products they wanted to be able to offer customers, products
and services they wanted her to develop, etc. are clearly relevant to
the issue whether NIHFCU in fact had a plan to build a new cash
management division.  Please produce all documents responsive to this
request or otherwise advise if there are no responsive documents.

We request receipt of the above information and documents prior to or
with your proposed MSJ Joint Statement.

Sincerely,

Sheila A. Reid, Esq.
JOHN F. PRENTICE & ASSOCIATES

2200 Powell Street Suite 740
Emeryville, CA 94608
p 510-420-9000
f 510-597-0718

CONFIDENTIALITY NOTICE: This message contains information and
attachments which may be confidential, privileged and protected from
disclosure. Unless you are the addressee (or authorized to receive
messages for the addressee), you may not use, copy or disclose to
anyone the message or any information contained in the message. If
you have received the message in error, please advise the sender by
reply email and delete the message without reading the information
contained within. Nothing in this message should be interpreted as a
digital or electronic signature that can be used to authenticate a
contract or other legal document.

Representing management exclusively in workplace law and related litigation

Confidentiality Note: This e-mail, and any attachment to it, contains privileged and confidential information intended only for the use
of the individual(s) or entity named on the e-mail. If the reader of this e-mail is not the intended recipient, or the employee or agent
responsible for delivering it to the intended recipient, you are hereby notified that reading it is strictly prohibited. If you have
received this e-mail in error, please immediately return it to the sender and delete it from your system. Thank you.

Copyright © 2003-2014. All rights reserved.

**NIH Federal Credit Union**
**Board of Directors Meeting**
**May 27, 2010**

<u>**AGENDA**</u>

Presentation by:

John Weisenhorn, Vice President and Dominick Petramale, Vice President from Bank
of New York Mellon will present on International Remit

1. Call to Order and Introductory Remarks from the Chairman and/or President

2. Executive Session

3. Reports for Unanimous Approval:
   a) Financial Reports
   b) Recommended Charge-Offs
   c) Federal Reserve Master Account Resolution

4. Approval of the Minutes of the Regular Board Meeting, dated April 22, 2010

5. Presentations:
   a) Legislative Update — Juli Anne Callis
   b) Check 21 — John Szeglin
   c) Mortgage Update — Scott Arkills
   d) Corporate Services Update — Stephen McGowan

6. Committee Reports:
   a) Supervisory Committee
   b) Business Development Committee
   c) ALM Committee
   d) Executive Committee

7. Old Business

8. New Business

   a) Record Retention Policy

9. Adjournment

NIH FEDERAL CREDIT UNION
MINUTES OF A MEETING OF THE BOARD OF DIRECTORS
HELD AT NIHFCU
May 27, 2010

## ROLL CALL

Directors present:  Steven Berkowitz (Chairperson of the Board), Donald Christoferson (Vice Chairperson), Dr. Karl Finley, Maria Joyce, Margaret Gordon (Secretary), Priscilla Irick.

Committee members present:  Donna Adderly (Chairperson, Supervisory), Eugene Belt (Supervisory Committee), Sandra Gault (Supervisory Committee), Richard Rhoads (Supervisory Committee) David Whitmer (Chairperson of the ALM Committee), Dan Reider (ALM Committee)

Management present:  Juli Anne Callis (President and Chief Executive Officer), Tim Duvall (Chief Financial Officer), David Perkins (Chief Technology Officer), Scott Arkills (Chief Lending Officer), Stephen McGowan (Vice President, Corporate Services), Christina Harrison (Auditor), Craig Mason (Vice President, Finance and Accounting), Steven Levin (Vice President of Marketing), Steve Peschin, Assistant Vice President Finance, Shawn Michael,(Risk Management Manager), Shampa Srivastava (Director, Accounting Operations), David Augenblick, (Director of Staff Development), John Szeglin, Assistant Vice President of IT and Sharon Watson (Manager of Administration-Recorder of Minutes)

Directors absent:  Janie Kuhn, Diane Charuhas, Dr. Lawrence Prograis

## CALL TO ORDER

Chairperson Steven Berkowitz called the meeting to order at 6:05 p.m.

Juli Anne Callis introduced Shampa Srivastava, Director, Accounting Operations and Project leader for NIHFCU's International Remittance Program and David Augenblick, NIHFCU's new Director of Staff Development

## APPROVAL OF THE MINUTES

A motion was made, seconded, and passed to approve the minutes of the meeting of the Board of Directors held  April 22, 2010 with the following modifications: That all future Board meeting minutes will include the Directors and Committee members who are absent from a Board meeting and revise the order of the Agenda back to what it was before.

**Presentations:**

John Weisenhorn and Dominick Petramale from Bank of New York/Mellon provided the Board with a brief operational overview of the credit union's new International Remittance program, International Payment Services (IPS).  IPS is scheduled to initially launch on June 24 at the Rockville Metro Plaza and Clinical Center Branches.  Upon satisfactory completion of this initial phase-in, it will be made available at other branches and will receive marketing support.

Juli Anne Callis provided an update on the Financial Reform Bill currently being debated on the hill. The interchange Amendment #3932 authored by Senator Durbin (D-IL) would open the door for the Fed to issue rules to put new price caps on debit interchange fees NIHFCU and other credit union's could collect.  Such legislation, if passed, would allow merchants to put new limitations on which cards they accept and could put high minimum purchase amounts on cards from issuers with whom the merchant doesn't have a special deal in place.  Ms. Callis reported that NIHFCU employees are being urged to contact their Senators to voice their opposition to this legislation.  In addition, Ms.

Callis notified the Board of NIHFCU's planned participation in a rally on Capitol Hill on June 9 with other financial institution representative who oppose this bill.

John Szeglin updated the Board on the credit union's plans to comply with "Check 21." Mr. Szeglin's presentation summarized this electronic check processing procedure, its benefits to the member and the credit union's operations. Mr. Szeglin states that the NIHFCU will begin implementing Check 21 in July.

Scott Arkills provided a Mortgage Update which highlighted the following: 1) Changes to the Mortgage Department's organizational structure including the recent addition of a Mortgage Originator, 2) Key business development strategies to enhance lead generation and conversion, 3) Staff training initiatives, 4) Transition to a new, more complete and less expensive online mortgage application system (Avista), 5) Latest mortgage pipeline statistics and 6) Methodology for determining if a mortgage should be sold or held. (See Attached)

Stephen McGowan presented a brief Corporate Services update including a status on the credit union's escheatment process and successes to date for 2010.  Mr. McGowan also discussed the credit union's vendor management policy which was reviewed by NCUA in the last exam with no issues to report.

Shawn Michael provided a brief Records Management summary.  Ms. Michael included updates on the Credit Union's latest work to streamline our utilization of Iron Mountain, Shred-It and FDI Collateral Management.  (See Attached)

A Record Retention policy was provided in the Board package for Board approval.  However, at the time this was brought to vote at the meeting, a quorum was not present and the vote did not take place.  The policy will be added to next month's agenda as old business.

### REPORTS FOR UNANIMOUS APPROVAL

After discussion, a motion was made to approve the Treasurer's Financial Report, Recommended Charge-Off Loans and the Retirement Pension Plan Trustee Change.   The motion was seconded and approved.

### COMMITTEE AND MANAGEMENT REPORTS

The President's Report was included in the Board of Directors' package.

Supervisory Committee – The Committee met on May 19.  Minutes of the meeting were included in the Board of Director's package.

ALM Committee –  The Committee met on May 12.  Minutes of the meeting were included in the Board of Director's Package.

Business Development Committee – The Committee met on May 18. Minutes of the meeting were included in the Board of Director's Package.

The Marketing Report was included in the Board of Director's package.

### OLD BUSINESS

No new business

### NEW BUSINESS

No new business

**DIRECTOR & EXECUTIVE COMMITTEE BUSINESS**

**ADJOURNMENT**

The meeting was adjourned at 8:05 p.m.

Mr. Steven Berkowitz
Chairperson of the Board

Ms. Margaret Gordon
Secretary

Enterprise Treasury Services

# NIH Federal Credit Union

*Presented by John Weisenhorn and Dominick Petramale*

May 27, 2010

BNY MELLON

ENTERPRISE
TREASURY SERVICES

# Agenda

I.   BNY Mellon Overview

II.  Remittance Market

III. Remit Worldwide Product

IV.  Reseller Service

BNY MELLON

2

ENTERPRISE
TREASURY SERVICES

# BNY Mellon

- BNY Mellon formed from Bank of New York and Mellon Bank merger July 2007
- US $22.1 trillion in assets under customer and administration
- US $966 billion in assets under management
- Service US$11.9 trillion in outstanding debt
- Process US$1.6 trillion in global payments daily
- Worldwide staff of 42,000
- Locations across 6 continents in 34 countries

BNY MELLON

ENTERPRISE
TREASURY SERVICES

# BNY Mellon Lines of Business

- Asset Management

- Asset Servicing

- Wealth Management

- Broker Dealer/Advisor Services

- Issuer Services

- Treasury Services

BNY MELLON

ENTERPRISE
TREASURY SERVICES

# Treasury Services Product Offerings

- **Domestic Payments**
  - ○ ACH
  - ○ Lock Box
- **Global Payments**
  - ○ Multi currency
  - ○ Persuette
  - ○ **Remit Worldwide**

BNY MELLON ·

ENTERPRISE
TREASURY SERVICES

# Global Remittance Market: Over $300B

About 34% of all remittance payments originate from the U.S.



| Europe | $50,805 |
|---|---|
| Russian Federation | $25,634 |
| Southeast Europe | $11,065 |
| Central Europe | $14,106 |

| Africa | $38,895 |
|---|---|
| North Africa | $17,129 |
| West Africa | $10,803 |
| East Africa | $5,153 |
| Central Africa | $1,317 |
| Southern Africa | $4,493 |

| Latin America and the Caribbean | $68,062 |
|---|---|
| South America | $22,298 |
| Central America | $11,031 |
| Caribbean | $9,379 |
| Mexico | $24,354 |

| Near East | $29,678 |
|---|---|
| Middle East | $17,657 |
| Turkey | $7,427 |
| Caucasus | $4,584 |

| Asia | $113,946 |
|---|---|
| East Asia | $23,709 |
| Southeast Asia | $32,506 |
| Pacific | $1,393 |
| Central Asia | $10,185 |
| South Asia | $46,153 |

BNY MELLON

ENTERPRISE
TREASURY SERVICES

# Remit Worldwide Product Rationale

- $100+ Billion is transferred from US to foreign countries each year mostly using non-FI providers

- About 50% of senders have US bank/credit union acct

- The market needed a solution from a regulated global bank; little to no competition from wholesale bank's

- Senders will migrate to use their bank/credit union who offers better or packaged pricing and convenience

BNY MELLON

ENTERPRISE
TREASURY SERVICES



# Trends in remittances

## How Remittances are sent today

- Money Service
- Business
- Bank
- By hand
- Mail
- Credit Union

70%

11%

10%

7%

2%

# BNY Mellon Remittance Strategy

- Partner with correspondents to build global distribution network in top receiving countries

- Launched remittance processing in 2003

  - Upgraded system in 2005 with the Direct Product website for receiving banks

  - Expanded platform for US sending banks in 2008

  - Expanded platform for European sending banks in 2010

- Support 15+ banks for remittance processing

- Process over 100,000 transactions per month

BNY MELLON

ENTERPRISE
TREASURY SERVICES



# BNY Mellon Remit Worldwide

Mexico
$24 billion
3000 branches

Jamaica
$1.9 billion
50 branches

Poland
$4.7 billion

Guatemala
$3.5 billion
300 branches

Honduras
$2.2 billion
80 branches

El Salvador
$3.1 billion
387 branches

Dominican Rep.
$2.7 billion
100 branches

Ecuador
$3.1 billion
80 branches

Peru
$2.9 billion
380 branches

Colombia
$4.5 billion
300 branches

Brazil
$7.3 billion
3600 branches

Turkey
$7.4 billion
3000 branches

Egypt
$3.6 billion
100 branches

India
$24 billion
3500+ branches

China
$21 billion
14000 branches

Thailand
$2.4 billion
900 branches

Vietnam
$6.8 billion
150 branches

Philippines
$16 billion
2800 branches

BNY MELLON

ENTERPRISE
TREASURY SERVICES

# Remit Worldwide Network Model



## Global Network

**NIH Credit Union**
(Originator)

Remitter

**BNY Mellon**
(Operator)

REM Application

**Foreign Banks**
(Distributor)

Electronic Deposit

Cash Pick Up

Beneficiary

# Product Overview

**Remit Worldwide is a white label application designed to move low value money transfers between Sending and Receiving countries**

- Web based application for branch or online channels

- Support pay out options for cash or electronic deposits

- NIH controls retail pricing, limits, disclaimers

- NIH controls branding, marketing, packaging

BNY MELLON

ENTERPRISE
TREASURY SERVICES

# Opportunity for NIH Credit Union

**Acquisition:** New business and customer loyalty growth, remittances are value-added services that attract new customers.

**Retention:** Offer existing customers a service usually offered by another provider.

**Fee income:** Low transaction fee allows credit union to earn more money for each transfer.

**Reseller:** Sell service to downstream credit unions

BNY MELLON·

E N T E R P R I S E
TREASURY SERVICES

# Reseller Model (How it Works)

- Functionality to private label application

- NIH determines pricing per credit union

- Downstream credit unions control branding, pricing, limits, country selections and marketing

- Funding

- Billing

BNY MELLON

ENTERPRISE
TREASURY SERVICES

# Partnership Advantages

## BNY Mellon

- Exclusive wholesale service provider; no retail
- Limited sales capacity to reach FIs < $1B assets
- Support team for sales, marketing and implementations
- Provide volume based pricing to NIH for competitive offering and attractive **ROI**

## NIH Credit Union

- Experience with retail marketing and sales
- Recurring revenue stream
- Established channels to reach retail credit unions
- Manage relationship and financial processing for all credit unions

BNY MELLON

ENTERPRISE
TREASURY SERVICES

# Key Partnership Terms

- NIH Credit Union will use DDA at BNY Mellon and have a service and reseller contract with BNY Mellon for Remit Worldwide

- NIH Credit Union will create service contract for CU's to sign w/ NIH

- For each new Credit Union, NIH will complete KYC form and submit to BNY Mellon for approval; BNY Mellon has right of refusal

- NIH Credit Union will pre-fund their BNY Mellon account and manage the funding requirements for each credit union to cover payments

- BNY Mellon will support NIH Credit Union with sales, marketing, implementation and training support

BNY MELLON ˙

E N T E R P R I S E
TREASURY SERVICES

This presentation is intended to provide a general overview of our services and is not an offering or commitment to provide any credit facilities or services.

©2009 The Bank of New York Mellon Corporation. All rights reserved.



BNY MELLON

# CONNIE M. DAVIS

## SENIOR OPERATIONS / BUSINESS TRANSFORMATION EXECUTIVE

Concord, CA 94521
Home: (925) 827-0728 ♦ Cell: (925) 595-8221 ♦ E-mail: conniedavis6@gmail.com

*I recruited Connie as my consulting manager for the most-critical multi-million dollar project in Bank of America's global project portfolio. As a high-level consultant, she managed cross-departmental project tasks, provided cash management subject matter expertise, and identified and managed the process changes this new platform would introduce to our Global Operations teams. Connie's skills in leadership, organization and analysis, along with her indefatigable work ethic and reengineering "know-how", were a critical success factor in meeting the very aggressive project deadlines. Not a single client was lost due to insufficient functionality or operational support. It is not often that a single person can come onto a project with such high corporate visibility and urgency and deliver beyond expectations, but Connie did just that, negotiating requirements and deliverables, allowing us to deliver a quality product on time and within budget. She far exceeded expectations, and was in the top 5% of performers companywide. Given the opportunity, I would hire Connie again in a minute. Gregg Donner, SVP, Bank of America*

## PROFILE

Outstanding leader with a proven track record as a Senior Client Services, Operations and Business Transformation Executive, capable of driving profitability and reducing costs through the implementation of strategic and innovative development strategies with an emphasis in the Financial Services industry.

Extensive background in developing, mentoring and leading regional client services and operations teams focused on driving excellent customer service and client loyalty programs throughout the United States. Exceptional management traits foster an environment rich in building trusted cross-functional relationships with multiple groups including Executive Management, Technology, Data Processing and Relationship Management.

Extraordinary collaboration and communication skills, coupled with industry insights into emerging opportunities and trends having led to providing business transformation deliverables on time and within budget during ever-changing and very competitive markets.

## KEY LEADERSHIP STRENGTHS

- ♦ Hands-On / Open Door Management Policy
- ♦ Staff Development and Mentoring
- ♦ Budget and P&L Management

Change Management /Merger Integration
Training Development and Facilitation
Revenue Generation and Cost Reductions

## PROFESSIONAL EXPERIENCE

**UNIVERSITY OF CALIFORNIA, BERKELEY**          Berkeley, CA                    2010 - PRESENT

**Senior  Business Manager**

Reported directly to the Project Director.  Responsible for all non-scientific, engineering and facilities related activities working on a multi-billion dollar effort with the National Science Foundation and the Department of Energy.  This includes Finance, Human Resources, Communications, Website Management, Procurement, Contract Management, Documentation Management and Support Services.  Oversite management responsibilities for Information Technology and Project Controls.

- ♦ Responsible for creation, maintenance and distribution of all reports and proposals required of the National Science Foundation
- ♦ Facilitation responsibilities for all National Science Foundation / Department of Energy conferences and review sessions
- ♦ Established the Limited Liability Company opened to manage the Sanford Laboratory in Lead, South Dakota
- ♦ Managed the project to open a new DUSEL website

- Facilitated a Docushare Improvement Project to improve and enhance the product's contribution to the project and users' use of the technology
- Oversight Management for the Preliminary Design Report to be distributed to the National Science Foundation
- National Science Board and Department of Energy to ensure continued funding of the effort
- Program Management responsibilities over multiple projects to enhance and streamline processing

**KEYPOINT CREDIT UNION**                     Santa Clara, CA                          2009

*A $51MM provider of state and federal credit union services, holding more than $896MM in assets and serving 80K members from companies including Apple, Google, Cisco, and other leaders in the high-tech industry.  One of California's largest credit unions.*

### Vice President/Director, Cash Management and Global Services

Reported directly to COO.  Recruited to lead all aspects of ramp of cash management and global services division, transforming credit union from retail-focused B2C into full-service B2C/B2B facility; documented business requirements to implement sales, client services, implementation and support services divisions.

- Ramp strategy included 30-employee build-out plan for organization and projected $7.8MM P&L.
- Created division supporting global remittance product, providing foreign nationals an inexpensive means of sending money home; included Mexico, Jamaica, India, the Philippines, China and Vietnam.
- Established nationwide resale protocol of Global Remittance Services to banks and credit unions.
- Created strategic alliance with Bank of New York/Mellon.
- Implemented paper-free, online product in branches.
- Within 60 days of launch, economy forced cancellation of effort, closing down all processes.
- Position eliminated after hiring manager resigned; CEO reorganized.

**BANK OF AMERICA**                     Concord, CA                          2008 - 2009

*A $124B provider of consumer, small business, commercial and corporate banking, credit cards, asset management, retail brokerage services, investment banking, and international business.  Bank of America boasts the country's largest branch network, with more than 6,100 locations in 30 states.*

### Vice President / Senior Documentation Consultant

Reported directly to the documentation control Senior Vice President.   Responsible for reviewing changes to legal documentation and negotiating finalized contracts with corporate clients.

- Marquee client included Yale University and Dallas Transit.
- Presented with strategic career opportunity with $35K salary base increase; resigned position.

**BANK OF THE WEST**                     Walnut Creek, CA                          2004 - 2008

*A $3.6B subsidiary providing deposit accounts, cash management, credit lines, card services, insurance, investment products, trust services, and financial planning with 700+ branches in 20 Western and Midwestern states; serving small/mid-sized companies. Parent company BancWest owned by French bank BNP Paribas.*

### Vice President/Director, Commercial Client Services – Jan/2005 – Dec/2007

Reported to SVP, Cash Management Manager.  Responsible for management of multi-site, multi-tier 60-blended-seat call center supporting cash management inquiries; managed cash management and depository products, loan documentation, disbursements, pay downs and trade activity.  Leadership and mentoring responsibilities for 4 direct reports and 100 indirect reports.

- P&L responsibility for $10MM; responsible for cost reduction, control and revenue generation.
- Solicitation and retention of marquee clients such as Irwin Home Equity, Gilardi, Diamond Walnut, Fidelity, First American Title and Santa Clara County.
- Recognized as Business Partner of the Year, driving growth and creating competitive advantage.
- Program Management responsibilities for multiple process improvement and technical projects implemented to enhance and streamline servicing, and improve technical capabilities
- Served as technical SME, supporting business development organization in closing revenue.
- Developed enterprise-wide new products Implementation Team staffed with dedicated officers meeting SLA's and increasing client satisfaction.

- Implemented client service and operational support best practices, streamlining processes and reducing FTEs by 15, saving $450K annually.
- Managed commercial / municipalities client services and operations, reducing costs by $600K.
- Thought leader in strategic client services business model / white papers and SOX compliance monitoring.
- Key driver in streamlining retail servicing process metrics, improving commercial client service level.
- Deployed enterprise-wide continuing education program for Commercial Client Services Division.
- Primary secure cash management initiatives and client migration program manager.
- Served as Mergers and Acquisitions Subject Matter Expert, managing M&A processes.
- Provided technical pre-sales support, product explanations and architectural sales expertise in enterprise/client opportunities for various cash management products, including remote capture, account analysis, account reconcilement and client access.
- Participated in the creation of multi-industry strategy.
- Co-leader in marketing efforts of industry leaders, relationship and deposit sales managers.

**Vice President/Client Services Manager** – May/2004 – Jan/2005

Reported directly to SVP/Director, Commercial Client Services.  Responsibilities included B2B sales support and training to provide premium service to clients; developed career path and mentorship program; managed annual goals and employee reviews; key contributor in development of online depository documentation.

- P&L responsibility for $2MM; managed 2 direct reports and 20 indirect reports.
- Marquee clients included Gilardi, Irwin Home Equity and Fidelity.
- Drove business development referrals and client retention.
- SME supporting cash management, deposit and credit products.
- Created cash management SME employee training program.
- Developed career progression path resulting in 8% attrition rate over two years.
- Developed and mentored Support Services Team, meeting all SLA's and reducing costs by $200K.
- Defined and sponsored client technical requirements; improved online service offerings.
- Provided pre and post-sales technical support.
- P&L responsibility for $4MM; responsible for cost reduction and control.

**INDEPENDENT STRATEGIC CONSULTANT**                    Concord, CA                            2002 - 2004
*Independent consultant providing comprehensive analysis and solutions services to Fortune 500 companies.*

**Consultant/Contractor**

Responsible for the development of strategy-driven solutions, driving client revenues, reducing costs and improving customer service and client retention.  Managed project teams of up to 35

Served as Training and Communications Consultant for $10MM healthcare project, managing pre-launch communications and enterprise-wide training initiatives required to prepare for Picture Archive Communications Systems.

**BANK OF AMERICA**                    Concord, CA                            1983 - 2002
*A $124B provider of consumer, small business, commercial and corporate banking, credit cards, asset management, retail brokerage services, investment banking, and international business.  Bank of America boasts the country's largest branch network, with more than 6,100 locations in 30 states.*

**Vice President/Senior Change Management Consultant** – Jan/1997 – May/2002

Reported directly to SVP, Global Business Transformation.  Repeatedly promoted.  In most recent position, served as member of global leadership teams responsible for strategic technical implementations related to merger integration efforts; led root-cause analysis and program-managed technical initiatives; managed relationships with bank divisions, business units and project teams to support cross-functional operations.

- Marquee clients included Chevron, Levi Strauss, Kaiser Permanente, Albertsons, Safeway, and Bechtel.
- Program manager for multiple technical projects supporting merger integration activities
- Responsible for banking platforms redesign, including functionality of sunsetted system.
- Implemented 6 technical initiatives, saving $40MM+ annually.

- ◆ Launched business requirements for online e-commerce platform, increasing real-time global transaction reporting to corporate and commercial clients by 166%.
- ◆ Re-engineered technical operational metrics, reducing loss exposure by 25%.
- ◆ Streamlined backroom processes, introducing automation and eliminating paper ticket transactions (up to 10K monthly), improving transactions descriptors, reducing encoding errors and client inquiries.
- ◆ Served as Mergers and Acquisitions Subject Matter Expert and M&A processes manager.
- ◆ Provided technical sales support for business development organization.

## PRIOR POSITIONS HELD

| | |
|---|---|
| BANK OF AMERICA | Vice President / Senior Client Services Manager – Large Corporate, Correspondent Banks, International Relationships |
| BANK OF AMERICA | Global Client Services Officer |
| BANK OF AMERICA | Branch Administration Officer, Orange County Banking Division |
| UCLA MEDICAL CENTER | Administrative and Clinical Support |

## EDUCATION

**UNIVERSITY OF CALIFORNIA,** Los Angeles, CA
Bachelor of Arts, History and Psychology

## PROFESSIONAL DEVELOPMENT, NOTABLES

- ◆ Six Sigma Black Belt Certification Program (in progress)
- ◆ Business Partner of the Year  – Bank of the West, 2007
- ◆ Certificate of Excellence for Leadership Awards
- ◆ Business travel tolerance Up to 50%

## KEYWORDS

P&L responsibility ◆ Six Sigma/PMP ◆ Business development ◆ Multi-site management ◆ Committed to exceeding corporate/customer expectations ◆ Passionate about leadership by example ◆ Training program/curriculum development ◆ Exceptional follow-through and attention to detail ◆ Benchmarking and performance metrics ◆ Meticulous about quality control ◆ Vendor/program/project/product management ◆ Workforce management ◆ Process reengineering and change management ◆ RFP responses ◆ SME, transaction services/item processing/capture ◆ Presentation of solution architecture, live product demonstrations, executive and end-user client briefings ◆ Vertical expertise:  large corporate, commercial, correspondent banks, retail, healthcare, higher-education, financial services, municipalities and utilities ◆ Executive-Level Client Excellence, Operations/Sales Operations, Account Management and Pre-Sales Engineering Professional ◆ Strategic Manager, leveraging 23 years global business process and call center experience ◆ Client relationship/cash management SME, driving revenue growth and competitive advantage ◆ Operational efficiency specialist, implementing best practices and improving Key Performance Indicators ◆ Articulate communicator who works well with individuals on all levels ◆ Training methodology expert ◆ Top performer, thriving in  high-stress, high expectation environments ◆ Proven architect of cohesive, high performance teams ◆ Visionary change agent

## EXECUTIVE BIO

Connie Davis offers 20+ years experience as a Vice President and Consultant in the Financial Services and Healthcare industries supporting corporate, commercial and municipality clients.  Effective leader responsible for managing costs, providing solutions, driving profits, strategic planning, organizational development, process improvements, training and day to day management of multiple client services and operations teams; supported depository, cash management, investment and credit products, as well as large and complex technical initiatives. Extensive business process management experience as a senior consultant and manager in the support of multi-million dollar merger-integration initiatives; development and implementation of business requirements and three to five year business plans for struggling organizations and new divisions.  This varied experience has given her significant insight into the identification and development of necessary processes for new or troubled organizations.

As the Vice President and Director of Commercial Client Services at Bank of the West, she led the successful financial and operational transformation of an underperforming client services business.  Ms. Davis enlisting a new management team to assist in the management of 100+ employees in Walnut Creek, Monterey Park and Fresno supporting commercial, municipal and business banking clients' depository, cash management, investment and credit needs; provided the highest level of service, streamlined processes and increased organizational performance and productivity which resulted in a unit that transitioned from what was considered a liability to a business partner of the year in less than two years.  Connie was responsible for establishing solid relationships with internal business partners and managing expectations while effectively resolving executive level escalation calls.   This resulted in the number of client and relationship management complaints being reduced to close to zero and the number of complimentary letters, e-mails and calls more than doubled.  Ms. Davis Instituted organizational goals and objectives which embraced extensive technical and infrastructure enhancements while fostering and deploying an effective enterprise-wide continuing education program for all personnel of the Commercial Client Services Division.  These enhancements increased department productivity and reporting and improved the product quality delivered to the client and placed the organization in the position to become a leader in the industry.

At Bank of America, Connie served in a variety of leadership roles as part of the core management team that implemented a variety of nationwide merger related technical initiatives that impacted the entire organization. In addition, she served as a leader on the Global Client Services core management team and was responsible for the implementation and roll out of a variety of CRM applications, process improvement initiatives that streamlined the resolution of incoming client inquiries and investigations, enhanced the service provided to the global client base and reduced costs through the consolidation and closure of various support units.

At KeyPoint Credit Union, Connie was responsible for creating two new business units to allow the credit union to compete with larger banks by providing cash management services; and to act as a vendor to smaller banks and credit unions by providing a global treasury services product supporting global remittance payments.

The combination of business operations, client services, business process management and sales support, coupled with a track record of success in a variety of different facets will position Connie well to contribute effectively in both traditional and rapidly changing, high growth environments.  Ms. Davis has an established record as a thought leader in establishing, defining and implementing the client services business model, the servicing and operational strategies as well as the technical strategy needed to make an organization an industry leader.  She has built and led both effective and diverse teams, while actively developing talent and planning the strategic elements essential to an organization's success is core to her management style and leadership philosophies.

Connie earned a BA in History and Psychology from the University of California Los Angeles, and is undergoing Six Sigma Black Belt Certification from California State University, San Marcos.

# ENDORSEMENTS

*Connie is a person of awesome skill and focus, and has a track record of applying those qualities to a number of successful ventures. Connie is able to walk into a room full of suspicious strangers and through her respectful communication, bring the room into confluence with whatever goal she is pursuing. She has managed very highly technical projects, large scale process change and conversion efforts and managed our most sophisticated clients. I was proud to work with her, and recommend her most enthusiastically. Marion Flynn, SVP Bank of America*

*Connie is an impressive associate. She has strong project skills and an inquisitiveness that is required to fully understand current processes and drive for solutions. She always kept the client central in all decisions made given her critical client-centric skill and her contributions were significant as we progressed through the Bank of America - NationsBank Merger. Connie is a diligent, committed and career-oriented individual who would be an exceptional contributor in a variety of roles, and I strongly recommend that you consider her for a challenging position within your organization. Lydia Connelly, SVP Bank of America*

*Connie has excellent project management skills, customer focus, knowledge of processes and people relationship skills that brought great value to the organization. Ms. Davis is professional in all aspects of leading and working with peers and senior leaders within the organization. Connie is a committed and highly motivated individual to succeed wherever she is assigned. Ms. Davis is a highly intelligent individual who strives for top performance from herself and from her teammate, and I highly recommend her for any challenging position that will utilize her skills and abilities. Steve Cargle, SVP Bank of America*

*Connie is an excellent leader, manager, and strategist. She successfully improved client support throughout a major cash management organization. I highly recommend her for any change management, cash management, operations or client support leadership role. Eve Dolin, SVP Bank of America*

*Connie is a highly motivated individual who always has the big picture in mind. She has a broad base of knowledge, particularly in the banking world, and also, has a skill set that is necessary to deal with a wide variety of people from various business demeanors. She has had the responsibilities of dealing with all levels of management from the highest corporate levels to the clerical staff in order to make sure that conversion projects are completed on schedule and within cost basis. Ms. Davis was critical to the positive overall conversion of the Bank of America-Nations Bank merger efforts. I would, without hesitancy, hire Connie for any effort needing strong leadership and direction. E. A. DeLanis, VP Bank of America.*

*Connie is a strong, independent thinker with excellent communication skills, managerial talent and a great deal of common sense. She effectively managed her team and was able to keep them on track, on time and within budget. I appreciated the no nonsense, clear feedback and action oriented decisions. I would recommend her highly. Martin Resch, EVP Bank of the West*

*I have known Connie for over 20 years and have had the opportunity to be part of her Management Team at Bank of the West. She has an excellent command of the Cash Management Business and insight to the Commercial Banking clients and their business needs. She is an effective leader who is firm yet fair in her management decisions and open to new ideas. She is a visionary and is effective in strategizing unit objectives to ensure company goals are achieved. Ernestine Thelander, Vice President and Manager, Bank of the West*

*Connie is an excellent employee that can produce results and is able to achieve business objective regardless of how difficult they may be. I worked in the same organization as Connie and saw the results of her work in my capacity as SVP at Bank of the West. I would hire her again, any time, at any company I work for if I have a need for her skills. Tad Scales, SVP Bank of the West*